We'll hear argument first this morning in Case 12-135, Oxford Health Plans v. Florida. Mr. Waxman. Mr. Chief Justice, and may it please the Court, in Stolt-Nielsen, this Court held, first, that a party may not be compelled to submit to arbitration unless there is a contractual basis for concluding that the party agreed to do so, and, second, that because class arbitration changes the nature of arbitration to such a degree that it cannot be presumed that parties consented to class arbitration simply by agreeing to submit their disputes to an arbitrator. That precisely describes this case. The agreement commits the parties to submit their disputes to arbitration and says nothing about class arbitration. There is no extrinsic evidence suggesting that the parties ever considered such a prospect, and there is no background principle of State law that favors it. About the parties never considering it, when this case was in the New Jersey courts, Oxford explained, this is in the red brief at page 27, it's quoting Oxford's counsel then, that the arbitrator has the power to ascertain whether the parties contemplated class arbitration in their agreement, a power in the arbitrator that Oxford does not contest. So that seems to be a recognition by Oxford that class arbitration was contemplated. Well, Justice Ginsburg, two things. First of all, if you look at page 10, or page 14, footnote 7 of our yellow brief, you will see all of the references made in the advocacy before the State court judge by my brother here, recognizing repeatedly that what Oxford was asking for was a dismissal and a transfer to individual arbitration, bilateral arbitration. There was no mistake whatsoever in the New Jersey State court that Oxford's position  Sotomayor, Mr. Waxman, you can finish your answer. Yes, that bilateral arbitration was what was requested, but there was similarly no dispute that both parties, certainly Oxford, took the position based on an understanding of New Jersey law at the time, because this Court hadn't decided class action questions, that the decision would be submitted in the first instance to the arbitrator as it was in Stolt-Nielsen. Yes, Justice Sotomayor, I apologize. Sotomayor, did you never argue that it was beyond the power of the arbitrator to decide this question, did you? In the first instance, no. And do you take the position that this is always an arbitrator's question when all disputes are supposed to be submitted, or was there just a mistake here? Well, I think there was a mistake here. I think it was understandable in light of the state of the law in 2002. So why should we rewrite our standard of review to accommodate your client's error? Because that's really what you're asking us to do. More than once we have said an error of law or fact is not a basis to say that an arbitrator exceeded his or her power. Justice Sotomayor, we are not asking the Court to vary in any material respect the highly deferential standard that's reflected in section 10A4 of the Federal Arbitration Act. But we are asking that that generally applicable standard of review be applied to a question with a very strong empirical presumption that the FAA has attached to it and this Court has announced, which is that absent an actual agreement by the contracting parties that they will permit their disputes to be arbitrated on a class basis, an inference that may not, as a matter of Federal law, be derived from an agreement to submit all disputes to arbitration. Kennedy, so your rule is that although we must defer to an arbitrator's interpretation of the contract, in this case there is an exception because? Well, in this case you defer, as you always do, but you have to provide there is some level of review. It's not just because the arbitrator says, I've looked at the contract and I think this. As this Court has said over and over again, including in Stoll, just saying something is so doesn't make it so. There is deferential review, but there is review. And the review is of a proposition that this Court has now said twice, strongly presumes that there is no agreement to arbitrate as a class unless it is clearly shown to be so and that that showing is not satisfied by an all-dispute. So we make that rule just with reference to the word arbitration when it's in the class action context, or does this apply to other words as well? Well, I think. I'm just not sure what the. So I think, I mean, this Court has recognized repeatedly that class, that the question of class versus bilateral arbitration is a special kind of question under the FAA as to which the Federal Arbitration Act itself applies a rule of decision. And therefore, the question, I suppose, is when a court looks at an assertion by an arbitrator that a language of the contract permits, and in this case the arbitrator found that it required class arbitration, a court has to ascertain whether that assertion of fact is at least plausible or, to use the vernacular of this Court in Stolt-Nielsen, the Court said in Stolt-Nielsen that the stipulation left no room for an argument that the parties had agreed, and similarly here. But there was no, in Stolt-Nielsen, the parties stipulated that the contract said nothing on the issue of class proceeding. In this case, we have no such stipulation. Correct. And the arbitrator is interpreting a term of the contract. The ordinary rule is that the arbitration, arbitrator's interpretation of a contract term, wrong or right, unless it's off the wall, is not to be overturned. Well, Justice Ginsburg, the — everyone agrees in this case, as one would have to based on the holding in Stolt-Nielsen, that if the arbitration clause in this case just said all disputes will be arbitrated, not litigated, that the arbitrator could be reversed if he found that that indicated an actual agreement of the parties to class arbitration. That is inconsistent with the actual holding in Stolt-Nielsen. And in this case, that sentence is indistinguishable from that orthodox clause. All disputes would be. Scalia, you are saying that this is off the wall. That's your — to put it in Justice Ginsburg's terms, right? Well, not to be pejorative, but I would say this. In the vernacular of Stolt-Nielsen, this language, quote, leaves no room for a conclusion that the parties agreed to arbitrate on. So you're saying that the deference which we give to arbitrators' statement of fact, like the deference we give to lower courts' adjudication of fact, has a limit? That at some point, the distortion of fact becomes an issue, a question of law, rather than fact, right? Yes. And in this case, a question of Federal arbitration. Do you have other examples from other — other review that we've given to arbitrators' factual decisions? Well, I mean, I don't want to adopt a special rule for — for class actions. But if you're telling me this is just a general principle, that at some point, if it's too much off the wall, it becomes an error of law and we can reverse it, what other examples do we have? Well, let me — let me refer you to Stolt-Nielsen first and then to a hypothetical example that my brother gave. I want a case. Okay. Stolt-Nielsen said I — But that is a class action case.  I want a— Oh, you mean a non-class action case. I want a case where we have — or where Federal courts have, with our approval, disregarded a factual finding by an arbitrator because the factual finding was too much off the wall, that there was simply not enough basis to support it. Justice Scalia, I can't — I'm sort of trying to scroll through all your arbitration decisions. I can't — there may be, I can't think of a holding of this. Well, no, I guess — I guess First Options is an example in which the arbitrator found that the parties had agreed to let the arbitrator decide the arbitrability question, and this Court held that that was wrong as a matter of fact. The Court reviewed the facts of the case and said there is no way that the Kaplans agreed to have the arbitrability question submitted. And if I may, I realize this isn't an actual case, but my brother gives the example of a form of deferential review which would allow a court to examine and reverse an arbitrator's decision in a context in which the arbitration agreement says this is going to be arbitrated under California law, and the arbitrator says, well, I'm not going to apply New York law in this case because, I don't know, the parties have all moved to New York and they like New York and they litigate in New York. My brother says that is reviewable and reversible, and that's exactly what we have here. We have here a clause that this Court has said cannot suffice to establish actual agreement to arbitrate as a class, and the arbitrator has said, nonetheless, I have read it that way. Roberts It's not exactly that this is not the only clause that provides for arbitration. It is not standard boilerplate. So you could say when he interprets it, he's really making a decision about arbitrability. And you can follow, I mean, you may disagree with it, I may disagree with it, but you understand the reasoning. It says no civil action to be brought, all such disputes go to arbitration, the class action is a civil action, so it must go to arbitration, and therefore it's there. Now, we may not agree with it, but it at least purports to be an interpretation of the language rather than a general rule. Waxman The fact that the arbitration clause, the sentence has two clauses. One says you cannot bring a civil action in court about any dispute under this agreement. You must settle your disputes in arbitration, is completely orthodox. And as we point out at page 24, note 3 of our blue brief, it's quite arguably required by New Jersey law and laws in other States that say to be perfectly you have to be perfectly clear when you are telling a contracting counterparty that disputes will be arbitrated, you have to tell them that that means that they cannot bring their disputes in court. And a rule, a reading of this, I mean, I submit to you that consistent with grammar and ordinary meaning of words, it cannot be plausibly read to say that you can't bring a civil action about any dispute in court means that you can arbitrate, you are agreeing to arbitrate your dispute on a class basis for a whole variety of reasons.  Mr. Waxman, can I just ask you what you think the standard is under 10a4? Because my understanding of the standard was that a court had to find that an arbitrator was exceeding his powers, was acting outside the scope of his authority. Waxman Yes. Kagan And that we have said quite a number of times that the fact that the arbitrator committed an error and even a serious error is not enough, that he had to be doing something that was simply outside the scope of his authority. Do you agree with that or disagree with that? And if you disagree with that, what's your standard for what we should be thinking about in under 10a4? Waxman I agree with that as a proposition of what review is under 10a4, that is, whether the arbitrator exceeded his authority. In this case, in the context of the question about actual agreement to arbitrate on a class, as a class, this Court has interpreted Federal law to require evidence of a contractual basis of actual agreement between the parties and has precluded as a matter of Federal law an arbitrator from inferring such agreement from an all-dispute  And that's it. Kagan And you don't disagree, do you, that this arbitrator, if you read his opinion, you might think it's terribly wrong, but that what he's doing is trying to construe  Waxman I think that the trying, I think, is not a defense. What I would say is that he's going, that he's looking at the words, that he's trying to figure out what the parties agreed on when there's no explicit statement about what the parties agreed on. Waxman Right. But he did not take cognizance of the holding of this Court in Stolt-Nielsen, reiterated in Concepcion, that you may not infer intent from an agreement to submit to arbitration, and more fundamentally, he did not heed the presumption under the Federal Arbitration Act that this Court's holdings in those two cases reflect. That is, this Court said in Concepcion that it would be hard to imagine that, hard to believe that defendants would ever bet the company with no effective means of review. There is, therefore, a presumption in the law that absent a very clear statement of a meeting of the parties' minds, there is no consent. But he indulged the opposite presumption. His presumption was that he exceeded his authority because he didn't apply a kind of clear statement presumption. But I don't think that we've ever suggested that there is such a clear statement presumption. In Stolt-Nielsen, we said that if the parties have stipulated that they haven't agreed on anything, then we're not going to accept class arbitration. But we've not said that in the process of construing an agreement, there is a clear statement rule. Now, maybe we should have said that, but, you know, it's no place in our case law now. Am I wrong? We are not — you didn't say the words clear statement. What you said in Stolt-Nielsen, what you held in Stolt-Nielsen, was not simply that parties who have stipulated can't be forced into class arbitration. What you held was that you cannot have class arbitration in the absence of affirmative agreement that is not evidenced by an all-disputes clause. And the — that background — that strong presumption must, as a matter of Federal law, inform the arbitrator's decision. And in this case, not only didn't it, because you said, look, an all-disputes clause doesn't suffice, and he said, well, there's the word civil action in here, and I think that that not only suffices, but that indicates an actual agreement to require class arbitration. That doesn't pass any test. It doesn't pass any test. Ginsburg. But in the combination of the two provisions, he said that everything that is excluded by the first provision is included in the second. And he also said something which may or may not be so. He said that this particular way of describing the — the what's arbitrable, this is an unusual wording. We have the no civil action in the first clause and then arbitration in the second. He said that he had never seen this particular language. Is he wrong in saying that this language is unusual? Waxman, Arbitration clauses that say, in one form of words or another, that you may not bring any dispute to court, you must bring all disputes to arbitration, is utterly commonplace. There was a clause in the Steelworkers Trilogy. I mean, there's a lot of citation to Enterprise Wheel in this case. The provision in the Steelworkers Agreement and virtually all labor agreements make this explicit. It's not precisely every single article and preposition in the clause here, but it is functionally indistinct. The same was true. Ginsburg. Was this a — well, was this an experienced arbitrator? I, so far as the record shows, yes. But my — whether he was right or wrong about this, I submit to you two things. Number one, there is no way — three things. Number one, there is no way, consistent with the rules of grammar, that one can read this sentence as sending class actions to arbitration, requiring class arbitration. Number two, there is no heed by the arbitrator. Number two is that for all intents and purposes, this clause is the clause that is orthodox, that was at issue in Stolt-Nielsen. It's the same as the one the Fifth Circuit decided and the Second Circuit decided and the cases, the other cases that created the split here. It's the same as the standard labor clause that was at issue in the Steelworkers v. Enterprise wheel. And, and this is my other point, it is plain from the arbitrator's decisions, both in his 2003 decision and in his post-Stolt-Nielsen 2010 decision, that he not only was not applying the Federal law presumption that this Court identified in Stolt and Concepcion, but he was applying the opposite presumption. He said in 2003 that because if this clause wouldn't be construed to permit or require class arbitration, it would mean that the parties had agreed not to resolve their case, that it would be, quote, so bizarre it would require an express provision. In 2010, he said, well, I overshot the mark here, but the point is still the same. And this is on page 41A, 40A and 41A of the Petition Appendix. He said the point is that if he is not allowed to bring a class proceeding in arbitration when he at least presumptively was in State court, that would be so strange that if the clause, and I'm quoting from the second full paragraph on 41A, if the clause cannot permit Dr. Sutter's court class action to go to arbitration, then Dr. Sutter's original class action must be outside of the arbitration agreement altogether. In other words, he was indulging a presumption that it is so unnatural. Breyer. That comes under our basic thing. As I read this, the difference was between this and Stolt and Nielsen. You have two parties here, and they both say, arbitrator, you decide whether or not this language that says nothing about it did encompass class or not. In Stolt-Nielsen, the claimant who wanted arbitration agreed that the clause said nothing about it. So given his concession there, the only way it could have gotten in is if the arbitrator was doing some policy thing. Given the lack of any similar concession here, the way that the arbitrator got it in is he read this ambiguous language, looked at the situation and said, hmm, I guess it's in. Now, in the latter case, we should presume everything for the arbitrator's favor. The former case, no, they admitted that it wasn't in the clause. Okay. So that now, what's the response to that? So the arbitrator — so a couple of responses. The arbitrators in Stolt-Nielsen didn't apply, didn't construe Animal Feeds' lawyer's concession at oral argument before the arbitrators the same way this Court did. What it said was that it is looking at the language of the contract, and as this Court's majority opinion points out, there are several textual references in the arbitrator's decision, and they decided, well, we're interpreting this, applying, I think they said, New York principles, that the parties didn't agree to preclude it, therefore they must be understood to have permitted it. What this Court said is, as a matter of law, no. Silence doesn't mean consent. Consent can only be shown in this type of decision by an actual agreement. The Court italicized the word agreement twice in its opinion. And it doesn't show actual agreement if you just agree to arbitrate, not litigate your disputes. So. Alitoro, Mr. Waxman, in a case like this, how is the arbitrator paid? Is the arbitrator paid by the hour or a flat fee? I'm not sure, Justice Alito, if the record shows that I believe it's by the hour. The point is that what this Court's the fact that there was a stipulation that the Court identified in Stolt-Nielsen made it easier to apply the principle that you that actual agreement is required, but you can't infer it from an all-disputes clause to the case. The Court said that the stipulation, quote, left no room for an inquiry regarding the case. Sotomayor, Mr. Waxman, how wrong does a arbitrator's decision have to be to become an issue of law? Meaning, because that's the rule you're proposing. I used to think that exceeding your powers was deciding an issue the parties hadn't agreed to arbitrate. But here you conceded that you gave the issue to the arbitrator. So he hasn't exceeded his power to construe the contract with respect to this dispute. Do you agree with that? Waxman, Yes, I do, but. Sotomayor, So what instead you're saying is that exceeded your powers means that an error the arbitrator makes has to be of what quality? Waxman, If you, so if you, an arbitrator exceeds his powers if it, if he decides to arbitrate a subject matter that the parties have not agreed to arbitrate. If he, he, he exceeds, he or she exceeds his or her power if they, if he or she decides, as this Court stated in Stolt-Nielsen, that you agreed to arbitrate with someone with whom you didn't agree to arbitrate. That is this case. And as I said, we are not at the, if you ask, I don't, I would apply, I think you could simply apply the standard that you applied in Stolt-Nielsen, which is the leave no room standard, which is pretty darn deferential. And you would have to find that this sentence, in light of Federal law as announced by Stolt-Nielsen, leaves no room for a conclusion that the parties, that Oxford and Dr. Sutter, actually agreed to class arbitration of the parties. Ginsburg. Well, of course, this was, this was an adhesion contract, so there was no, it was drafted by Oxford. And you made a point about betting the house, that the company wouldn't have agreed to it. But on the side of the doctor, he has a $10,000, a $1,000 claim, and he is saying that without a class proceeding, there is, there is essentially no means to enforce the contract against Oxford, that none of these parties, none of the, what was it, 13,000 doctors, none of them could enforce the contract, because the expense would be much greater than the $1,000 they could get in. Justice Ginsburg, neither the arbitrator nor any of the courts below made any finding about whether this is a contract of adhesion or whether this is a so-called negative value case. There was litigation over Federal court subject matter jurisdiction, and the Court found that there was, in part, based on evidence that Oxford submitted, that there were many claims that were far in excess of $75,000, and it is not true that Dr. Sutter's claims as he brought them to arbitration was $1,000 or anything like it. May I reserve the balance of my time? Roberts. Thank you, counsel. Mr. Katz. Mr. Chief Justice, and may it please the Court, I would like to start out by discussing the applicable standard. There are only two ways a losing party can vacate an arbitration award under 1084, which is the only standard that applies here. It's the only question that came up to this Court on cert, and under the exceeding power standard. Number one, the arbitrator had no authority to interpret the contract, or number two, the award was based not on an interpretation of the contract. Oxford cannot satisfy either of those standards here. Oxford does not dispute that the arbitrator interpreted the contract. Oxford's sole dispute here or challenge is that the arbitrator interpreted the contract incorrectly. That's all he has to do, is saying, you know, I'm interpreting the contract and whatever he says is okay then, right? I mean, we were concerned in Stolt-Nielsen about a company betting the company, right, on class action, whenever it agrees to arbitration, because class arbitration, you know, will bankrupt the company and without an appeal to the court, or, you know, not much of an appeal anyway. And you're saying that in effect you do bet the company every time, so long as you leave it up to the arbitrator to decide whether there's a class action allowed or not, which most agreements probably do, he can find whatever he likes, right? He can find, so long as he says, I'm interpreting the agreement, it can be as wildly inconsistent with the agreement as you like, and there's nothing the courts can do about it. Justice Scalia, Stolt-Nielsen taught us that the language of the contract or any other evidence has to demonstrate the — that the parties agreed to class arbitration. Stolt-Nielsen did not alter this 10A4 standard, the same standard which, before it was codified. And you think that standard, all that standard means is that the arbitrator has to say, I am interpreting the contract, even though it, what he says, is flatly, visibly, unquestionably contrary to what the contract says, and the court has to accept that, so long as he says, I'm interpreting the contract. This Court's jurisprudence for almost two centuries has held just exactly that. Just exactly that. I think so. Breyer, I thought it said that the award, if the award displays, manifest disregard. Words like that. I mean, MISCO is not absolute. MISCO has a narrow exception. And that exception is where there is just no basis in the contract for the decision. And so I thought you were arguing that here, that's clearly not so. There is a basis. Well, there is a basis. What MISCO, as I understand what MISCO teaches, is that it has to be unambiguous that the arbitrator. Breyer, that's a different thing. It doesn't say whatever he says about the contract. He wins. It says what he says about the contract that is not just manifestly wrong, that isn't just plain language to the contract, et cetera. There is language in the cases to that effect. So I wouldn't be repeating myself, but are you saying there is no loophole, no matter how tiny? That's news to me. Well, Justice Breyer, I don't think manifest disregard, certainly manifest disregard is not a standard by which this matter has come up before the Court. And this Court has held in Hall Street and other cases that 10a.4 is the exclusive ground set forth by Congress that this Court did not have the authority, and I'm quoting the Court, it did not have the authority to expand. Suppose I think, since I wrote the words in First Options, that something like manifest disregard or totally ignoring plain law is a ground for reversing an arbitrator, even an arbitrator. Now, suppose I think that. Then do I decide against you? No, Justice Breyer, because here both sides, not only in 2003, but in 2010 after Stolt-Nielsen came to the arbitrator and said, we want you to decide it. They told the arbitrator at that time, look at the agreement, look at what transpired in 2002 back when this matter was in the superior court, and make your decision. So the arbitrator applied the law that and applied the standard that he was told to apply. He didn't just disregard it. He didn't make a decision saying, I don't care what you are telling me to do. Scalia, what supports his decision? I mean, you say that. What supports his decision that the parties here agreed, agreed, that's the standard. Did they agree to class arbitration? What supports that? Justice Scalia, they did agree. When we were in court in 2002, Oxford represented to the State court judge there that not only are the disputes going to arbitration, but all actions regarding the disputes. And the judge specifically relied upon that, expressly relied upon that, in not sending just the disputes, but sending everything that had been asserted by Dr. Sutter, including the claims of the class. And the arbitrator didn't. I don't understand. There's a distinction between all disputes and all actions relating to the dispute? Oxford made that distinction in 2002. In fact, and we point this out in our brief on page 5, the red brief, where Oxford has expressly – it's both on page 5 and page 6, and I'll refer to page 6, the top of 6. This is Oxford's counsel in 2002. The contract – The red brief, top of page 6? Top of page 6, Your Honor.  The contract says actions concerning any dispute. That was what Oxford has always argued at all times before the arbitrator. The arbitrator understood that. The arbitrator interpreted the agreement and based both on the agreement and on the representations made by Oxford as to what its own agreement meant. Roberts. Roberts. That's inconsistent with the law that's developed, actually, in fairness to the arbitrator, after he had made his initial decision, which is that if you have something that just says disputes and doesn't address the issue of class arbitration at all, that you can't have class arbitration. The arbitrator, however, Mr. Chief Justice, cannot be faulted or his award vacated based upon changes or arguments that were never made at the time. The parties made their arguments to the arbitrator. Oxford, if you will, sat on the sidelines. And this Court has also held that a party cannot sit on the sidelines, wait until the award comes down, and when it's against them, then raise new arguments for the first time. I was just going to finish saying Oxford could have raised these arguments, and maybe at the end of the day, if they raised those arguments, they would have carried the day. But I respectfully submit, as this Court has repeatedly held, that courts do not have the authority to second-guess the arbitrator and make decisions or come up with a resolution that would have been different with the arbitrator just because they disagree. Sotomayor, getting back to Justice Breyer's question, I thought his first options is fairly strong authority for him, because there you have a situation with the arbitrator determining that a particular entity or individual is bound by the agreement. And we said that's something that we will review de novo, without deference. Why isn't it the same here? In other words, not everything an arbitrator says is subject to the deferential standard of review, even if he purports to say, I'm interpreting the agreement, which I think the arbitrator in first options did. Here, Mr. Chief Justice, the arbitrator did exactly what the parties had asked him to do, though. He did not venture and do something outside of what the parties had asked him. The parties specifically presented the question to the arbitrator as to whether class arbitrations were available, and specifically directed the arbitrator both to the agreement, the language in the agreement, as well as the representations and the submissions that were made below in the court system in making their respective arguments. And this was the case. Sotomayor, I thought that Oxford conceded that it did not preserve any question of entitlement to de novo review. That is correct. Oxford has always maintained that it was the arbitrator's decision to make. And in 2010, even after Stoltenhielsen came back to the arbitrator and asked the arbitrator to reconsider his opinion from 2003, the Oxford had never, until after losing this case, obviously, has Oxford sought the court for the first time for a de novo interpretation of the case. Sotomayor, you seem, I don't know, I see two questions here. The first was an arbitrator exceeds his power if he decides a question is arbitral when it's not. And but here there's no dispute about that, because you're right, your adversary submitted this question to arbitration. And that's what I'm hearing you respond. He did. There's no question he said the arbitrator has to decide this issue. Justice Breyer raised the second question. Assuming he could, is there any remaining power in the court to overturn his decision? And Justice Breyer said if the standard is manifest disregard of fact and law, why would you still win? Because your adversary is saying the law is clear, you have to find some hook in the agreement to agree to class arbitration, and he says there's none. That's basically his position, that the arbitrator's decision on its substance manifestly disregarded the law. So that's the question that I believe is extant still. Answering that hypothetical, assuming that there was a hypothetical. Well, if there was a manifest disregard. No, I want to say why there wasn't. I want you to explain why there wasn't one. Well, the arbitrator did not manifestly disregard. The arbitrator did what the parties wanted the arbitrator to do. Yeah, yeah, no, that, look, I'm going to say something and you're going to say, oh, that's right, that's just what I wanted, and that won't do me any good, if you don't think of it. The arbitrator in front of me, so you better tell me why I'm wrong, because they certainly will, and they're in the briefs. Mr. Arbitrator, this class, this language here says all disputes will go to arbitration. It doesn't say whether they're supposed to be class or can be or can't be. You decide what it means. And the arbitrator thinks, hmm, all, hmm, it doesn't say, but I've got to reach a decision. So what kind of a case is it? Small claims, then it says something about court suits where they have class, hmm, gets his magic 8-ball out, and whatever it is, he says, that's what it means. It means it could include class, too. Okay? We're in our case law. Is that a manifest disregard? He looked at the language. There were two plausible constructions. He came up with one of them. What's the problem? Now, that's, of course, their problem. But if you just say yes and don't go into why they're saying no, it's not going to help me. Well, I don't believe that is a ‑‑ Justice Breyer, I don't believe that is a manifest disregard. So nor ‑‑ obviously you don't. And the reason being is that the arbitrator based his determination on the fact that the ‑‑ on the standards or the materials that were put forth before him, the agreement and the evidence, and he made a decision. But that's not enough. As stated by Justice Breyer, he has to have come to a plausible construction. It's not enough that he said, I'm constroying the contract. I looked at the terms of the contract and what the parties said, and my construction of the contract is X. That's not enough. It has to be plausible. Now, why is this plausible? Well, I ‑‑ with all due respect, Justice Scalia, I don't think plausibility comes into play here. All right. Use whatever word you want. Manifest disregard. Stick to the law. Now, suppose the arbitrator had said this. It doesn't say how to do it. I see how to do it. You get out a magic eight ball. Now, we would strike that down, because that is not relevant. But he didn't say magic eight ball. He said class. And there are many class arbitrations. So it isn't quite magic eight ball. And you explain to me ‑‑ Scalia What's a magic eight ball? I don't know what you're talking about. Breyer Magic eight ball is the other thing. It's the non‑sportsman's equivalent of throwing darts. It's not ‑‑ Ginsburg Why don't you, Mr. Panner, why don't you concentrate on what the arbitrator himself said? Mr. Waxman said this clause wasn't unusual, but the arbitrator said I've never seen anything like this. Waxman Justice Ginsburg, what the arbitrator had found was that the no civil action part of the clause was ‑‑ was coextensive. It was completely interrelated with the mandatory arbitration provision. In other words, what the arbitrator found was that everything that was prohibited from being filed in a litigation in the court had to be arbitrated. And that was based on not only ‑‑ Alito Can I ask you a question on something a little bit different? Did the arbitrator have ‑‑ how many parties were there to this agreement? There's Oxford on one side, and how many doctors on the other side? Waxman Well, this specific agreement was Dr. Sutter and Oxford, but there were 20,000 physicians who had signed the same agreement. Alito All right. So 20,000. And the effect of the arbitrator's decision is that all of those 20,000 doctors are deemed to have agreed to class arbitration, right? Waxman Correct. Alito And if we assume, if I ask you to assume for the sake of argument that this agreement does not constitute an agreement to engage in class arbitration, where did the arbitrator get the authority to make that holding with respect to all of these absent class members? Waxman Well, the arbitrator ‑‑ Alito They didn't agree to class arbitration. How can they ‑‑ and they didn't agree to have the arbitrator decide whether the agreement calls for ‑‑ for class arbitration. How did he purport to bind them to that decision? Waxman Well, the arbitrator made the decision based on the language and the evidence presented before him and finding that it authorized class arbitration. That was the determination that was made initially. Ginsburg If the contract authorized it, as for Dr. Sutter, all of the others are similarly situated. They got the same contract. Waxman They all had the same contract. Ginsburg If it means what the arbitrator said it meant or it doesn't. If it means what the arbitrator said it meant, then everybody's bound. Waxman That is correct. Now, ultimately, when the matter was certified, it was in Oxford. Alito Wait a minute. Where did he get the authority to make that decision to interpret the contract with respect to them? You're saying that he can do it with respect to Oxford because Oxford agreed to have the arbitrator decide whether this calls for class arbitration. But these other people didn't. They didn't agree to have the arbitrator decide whether it calls for class arbitration. Waxman Well, Justice Alito, this is no different than in any other contract interpretation issue. The arbitrator makes a determination based upon the reading of the language and what the parties are telling him that language means. Roberts But the difference is in first options. The one thing first option says is the question of who is going to be bound by arbitration is decided by the court de novo. And in the class context, you are binding 19,999 individuals who did not agree to be bound, depending upon the particular interpretation. Waxman But Stolt-Nielsen, which the arbitrator faithfully reviewed, analyzed and followed, makes clear that you can have class arbitration as long as the arbitrator determines that the contracting parties to that agreement establish that class arbitration is available. Scalia Did these other people agree to this arbitrator? I mean, they might have said this arbitrator, well, he's a wild guy. He's going to say that we agreed to class action. We didn't agree to class. I don't want this arbitrator. They didn't agree to this arbitrator. Why should they be bound by whatever he says? Waxman Well, for one thing, Justice Scalia, that's exactly what Oxford wanted. Oxford argued that the class action should go into arbitration. Scalia Could they opt out? Waxman Well, ultimately, they could opt out when it was certified. And I want to be clear on a point, if I may. Scalia How could they opt out if they've agreed to class arbitration? Waxman Well, they can opt out of the class and pursue, if they wanted to at that point, an individual arbitration if that's what they chose to do. Scalia Are you sure? It seems to me if they've agreed to class arbitration, they've agreed to class arbitration. Waxman Well, they proceeded, they agreed for the matter to proceed as a class proceeding. But that would be more than one of the reasons. Ginsburg And there are rules that governed that, right? Waxman That is correct, Justice Ginsburg. That is before we get to the issue of whether the class would itself be certified. Kennedy But how could they opt out if the arbitrator said, says, as Justice Scalia and Justice Alito are suggesting? We have — I have jurisdiction to decide this case. I decide that there is a class action. All these people are in the class. Waxman Justice Kennedy, the determination that this matter could proceed as a class arbitration was only the first issue that was decided. We then engaged in the procedural mechanism by which the matter could be certified as a class arbitration. Alito Well, presumably they could opt out, but did they agree to be bound by this unless they opted out? That's not the usual way people are bound by litigations. Waxman But everyone — Justice Alito, everyone signs the same agreement, and therefore if the arbitrator is going to make a determination, he has to find a split. Alito You are not accepting my assumption that this is an incorrect interpretation of the contract. That's the assumption. This is incorrect. If we were reviewing this as an appellate court, reviewing the interpretation of the contract under Stolt-Nielsen, we would say this is wrong. This is really wrong, okay? Assume that to be the case. Then how are they — how are these absent people bound? And it's really not an answer to say, well, they can opt out. If they didn't agree to be bound by this arbitrator's decision, then they didn't agree to be bound absent by opting out, which is an unusual procedure. They're being bound by an agreement. Ginsburg You could never have class action arbitration if that were so. It would be impossible because you could never get in advance. They find out by getting notice, and then they decide whether they want to stay with it or opt out. Waxman Well, in any class arbitration, the arbitrator is not going to decide the same questions as to the 20,000 of the same agreements. It's decided based upon the class representative who brings the matter. And even if the arbitrator was wrong, Justice Alito, I submit that under 10A4 and the applicable standard, that even in Concepcion, this Court said 10A4 is not an issue of mistake, it's an issue of misconduct. And that's not what we have here. If there was a mistake, that still would not be enough, with respect, for the courts to have vacated the arbitrator's determination on this matter. Roberts I'm not sure it's relevant, but it might be. I thought the purpose of arbitration was to decide these things quickly. This has been going on 11 years, right? Waxman This has been going on 11 years, that is true. It's been going on 11 years. Roberts It's not a facetious question, because I think one of the concerns about class arbitration is that it eliminates the supposed benefits of arbitration, because you can't have sort of quick and rough and ready determinations when it's going to bind 20,000 people. Waxman Well, class arbitration is, as in many arbitrations in this day and age, involves complex issues that sometimes you have major corporations doing battle over major agreements that they know at the time involve big-ticket items. Kennedy Well, let me ask you this question, because I think it's consistent with the answer you're giving to the Chief Justice, a little bit different, though. Suppose you have — and this is a hypothetical case. This is not this case, so I don't know the fact of it. Suppose you have an attorney in a small town, well-respected, doesn't have a great big practice, and he's chosen as the arbitrator. And if he arbitrates the one case, he's going to get a fee of, I don't know, $10,000. He says, you know, if this is a class arbitration, I can keep this going for 11 years, I will make a million dollars. Does he have the obligation to say, I'm going to decide the class action issue under this theory that was decided here? And after I do that, since I have a conflict, I'll bow out. I'll just say there is a class action, then I'll leave it for some other arbitration. Does he have that obligation? And if he doesn't, should that bear on our decision here? Katyal Justice Kennedy, that should not bear on the decision here, because this matter comes up under 10a.4. If there were questions about the partiality of the arbitrator, that I want to rule in favor of Katz, because I want to prolong this thing as long as possible, then perhaps Oxford should have brought the matter under 10a.2. Ginsburg How long? Can we straighten out this 11 years? How many years was this in the New Jersey courts before there was ever an arbitrator appointed? Katyal Well, the matter wasn't in the New Jersey courts for that long, but various points in time, because the AAA rules allow for a filing of a Federal suit to vacate, Oxford on multiple occasions. Kennedy But tell me, why is that a factor or not a factor in our decision? That should not be a factor in our decision? Katyal Partiality is not a factor, Justice Kennedy, in this decision. In this decision, because partiality, or what could potentially be perceived as a subjective intent, so the arbitrator does not play under 10a.4. And if I may add to that. That provision, the partiality provision, is addressed to favoring one party as opposed to another party. I think Justice Kennedy's question goes to an institutional concern about an arbitrator making a decision of this sort that goes not to partiality between parties, but a problem about the way the system would work that would create an incentive for an arbitrator implicit or explicit to reach a ruling that expands his authority. Sotomayor Well, arbitrators, I would submit that an arbitrator who was doing something that was documented or perceived to be crazy, and pardon my vernacular, are just way out of line, then I submit that arbitrator is not going to be hired again. Ginsburg How many, how, what is the history of class actions in arbitration? There are at least enough of them so that the A.A.A. has a set of rules about how you handle class arbitrations, right? That's correct. I think it's important, if I could just address a couple of points regarding that. How many have there been? Have there been dozens, hundreds, thousands? Do you have any idea? I don't think there have been thousands, but I know there have certainly been a number so far that the American Arbitration Association has set forth rules, and there are. Scalia I'm sure there's been a number. What's the number? I don't know the number. Scalia It could be less than 100. I would know that, Justice Scalia. But if I may point this out, class arbitrations were certainly in existence at the time that this matter was sent into class arbitration. And, in fact, I think it's also worthy to understand that when I brought this matter in superior court, I argued that the class action should be kept in court. But it was Oxford's argument that everything, including the class action, go into arbitration. It was Oxford's interpretation of its own clause that the arbitrator relied upon, which puts this case completely outside of Stolt-Nielsen, where in Stolt-Nielsen, the arbitrator fashioned his own rules based on some policy preference about arbitration and about class actions, which wasn't present here. And if I could address an issue that was raised about that the arbitrator discussed something was bizarre. In 2003, that was a pre-Stolt — that was prior to Stolt-Nielsen, the arbitrator expressly disavowed that in his 2010 opinion. And he made it very clear that he based his decision on the interpretation of the agreement as well as the representations made as to what that agreement meant to the court system. I think this Court has recognized for two centuries that an arbitrator's error in law of fact cannot be the grounds for a vacator. I'm sorry to just interrupt. For most of that two centuries, courts refused to enforce arbitration agreements. That's the whole reason we have the FAA. But here both sides, Mr. Chief Justice, expressly asked the arbitrator, this is not a question of arbitrability, because both sides wanted the arbitrator to make that decision, then even after 2010, when it came to light that Basel, it was a plurality and the issue of whether it's a question of arbitrability is an open question, Oxford didn't go to running to court then. Instead, it went back to the arbitrator and said, we want you to reconsider your 2003 decision. And the arbitrator again went through the analysis of interpreting the agreement and the representations made by the parties about what that agreement meant. I submit we have to, if we trust arbitrators to handle such important issues as civil rights issues and other very important matters of singular importance, we have to expect that they will follow the precepts of this Court and the FAA as to what constitutes grounds for class arbitration. I think the Third Circuit should be affirmed if there are no other questions. Roberts. Thank you, Mr. Katz. Mr. Waxman, you have two minutes remaining. Thank you. I have three points, two small ones and one significant one. The first small one is that this notion, this canard, that we told the State court judge that class actions should be sent to arbitration, is dispensed with on pages 13 and 14 of our reply brief, following the sentence, Tellingly, Sutter resorts in part to misrepresenting Oxford's previous positions. And I refer the Court again specifically to footnote 7 on page 14, where we quote my brother's statements to the State court judge, explaining that what we were asking for was, quote, a motion to compel individual arbitration. The second small point goes to the issue of what the number is of class arbitrations. I also don't know that. But we know that as of this Court's decision in Stolt-Nielsen, because this was reported in the AAA amicus brief, that not a single final decision had been rendered prior to Stolt — as of the time of Stolt-Nielsen in any class arbitration. The AAA class arbitration rules were adopted after this Court's decision in Basel, which left open the possibility, a possibility that the arbitrator in this case said was surprising, because the arbitrator said quite correctly that everyone expected that in Basel this Court would say there's no such thing as class arbitration. Kennedy, What is your significant point? Yes. I can't go back 200 years, but let's just go to 1960 in terms of the standard. And in the Steelworkers v. the Enterprise Wheel case, what this Court held was, quote, an award is legitimate only so long as it draws its essence from the agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. And our submission is that this award, the conclusion that the all-disputes provision here manifested an actual agreement by the parties to class arbitration cannot possibly be reconciled with the plain language or Stolt-Nielsen's holding. Thank you. Thank you, Mr. Waxman. Counsel, the case is submitted.